429 A.2d 698

COMMONWEALTH of Pennsylvania, Appellant,

v.

Tracey Lynn WILLIAMS and Maureen Zimmerman.

Superior Court of Pennsylvania.

Submitted Nov. 11, 1980.

Filed May 8, 1981.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

George G. Mahfood, Pittsburgh, for Williams, appellee.

Joseph G. Kanfoush, Pittsburgh, for Zimmerman, appellee.

Before PRICE, CAVANAUGH, and HOFFMAN, JJ.

HOFFMAN, Judge:

The Commonwealth contends that the lower court erred in suppressing a quantity of drugs seized from appellees. We disagree and, accordingly, affirm the order of the lower court.

At approximately 12:30 a.m. on September 23, 1979, Officer Harry Fruecht was on patrol in Upper St. Clair when he saw two cars parked in the middle of a dark, abandoned, private parking lot of a swimming pool which was being salvaged. The two cars were parallel to each other and were facing the street. Appellees were seated in the front of one of the cars, a Plymouth. Another person was standing at the right front door of that car. Officer Fruecht testified that because of the late hour and the fact that there had been recent reports of residential burglaries in the immediate area, he decided to approach the vehicle and ask the three people for identification. On cross-examination, however, he admitted that he had received no report of any criminal activity that evening nor had he observed anything indicating that criminal activity was afoot. Officer Fruecht parked his marked patrol car next to the Plymouth, approached the right side of it on foot, and asked the three what they had been doing. Someone replied that they had been talking. The officer then requested identification from all three. As appellee Tracey Lynn Williams (who was in the right front seat) opened her purse to get some identification, the officer shined his flashlight into her purse, and saw a small plastic bag containing a substance which he believed to be marijuana.[1] After producing her identification, Ms. Williams closed her purse, whereupon Officer Fruecht questioned her about the bag. She denied that she possessed such a bag. The officer then reached into the car, grabbed the purse, took it to the front of the car, and emptied its contents onto the hood. In addition to the plastic bag containing marijuana, he found two plastic vials containing

1. Officer Fruecht had been standing by the right front door of the car. He testified also that he did not lean or reach into the car as he looked into Ms. Williams' purse.

some pills, and a number of small plastic bags containing white powder. Officer Fruecht asked Ms. Williams to get out of the car, and he arrested her. As she was getting out, she exposed a brown paper bag which had been on the floor at her feet. The bag had been tipped over and opened, revealing a second larger plastic bag of marijuana. The officer then confiscated the brown bag, ordered appellee Maureen J. Zimmerman from the car, and placed her under arrest.

Appellees were charged with several violations of the Controlled Substance, Drug, Device and Cosmetic Act.[2] Appellees subsequently filed a motion to suppress, alleging that the drugs were seized unlawfully and that their arrests therefore lacked probable cause. After a hearing, at which Officer Fruecht was the only witness, the lower court granted appellees' motion. The lower court reasoned that because Officer Fruecht had forcibly detained appellees without adequate justification, the evidence which he seized must be suppressed. This appeal followed.

In *Terry v. Ohio*, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875–76, 20 L.Ed.2d 889 (1968) (footnotes omitted), the United States Supreme Court stated:

Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life. Moreover, hostile confrontations are not all of a piece. Some of them begin in a friendly enough manner, only to take a different turn upon the injection of some unexpected element into the conversation. Encounters are initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute for crime. Doubtless some police "field interrogation" conduct violates the Fourth Amendment. But a stern refusal by this court to condone such activity does not necessarily render it responsive to the exclusionary rule.

2. Act of April 14, 1972, P.L. 233, No. 64, 35 P.S. § 780–113.

In striking the balance between the constitutionally protected interests of the private citizen to be free of unreasonable searches and seizures and the governmental interests which sometimes justify official intrusion upon those interests, *see Terry v. Ohio, supra* at 20–27, 88 S.Ct. at 1879–83, courts have identified three levels of governmental intrusion which require an increasing degree of justification to withstand constitutional scrutiny. *See generally United States v. Wylie*, 569 F.2d 62 (D.C. Cir. 1977); *People v. De Bour*, 40 N.Y.2d 210, 352 N.E.2d 652, 386 N.Y.S.2d 375 (1976); *State v. Warner*, 284 Or. 147, 585 P.2d 681 (1978). The least offensive of these intrusions occurs when a police officer approaches a citizen and directs a question to him when there is some objectively credible reason not necessarily indicating criminality.[3] A more severe form of governmental intrusion occurs when a police officer detains an individual by means of physical force or a show of authority for the purposes of investigation upon a suspicion that he may be connected with criminal activity.[4] Of course, "in justifying [such an] intrusion, the police officer must be able to point to specific and articulable facts which, taken together with

3. *Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Jones*, 474 Pa. 364, 378 A.2d 835 (1977), *cert. denied*, 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978). *Accord, United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion); *Terry v. Ohio, supra*, 392 U.S. at 19 n.16, 88 S.Ct. at 1879 n.16, and *id.* at 32–33, 88 S.Ct. at 1885–86 (HARLAN, J., concurring), and *id.* at 34, 88 S.Ct. at 1886 (WHITE, J., concurring); *United States v. Wylie, supra; United States v. Coates*, 413 F.2d 371 (D.C. Cir. 1969); *People v. Kennedy*, 66 Ill.App.3d 267, 22 Ill.Dec. 905, 383 N.E.2d 713 (1978); *State v. Conti*, 573 S.W.2d 95 (Mo.App. 1978); *People v. Jackson*, 72 App.Div.2d 149, 423 N.Y.S.2d 173 (1980); *Merideth v. State*, 603 S.W.2d 872 (Tex.Crim.App.1980). *See also Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969).

4. *Commonwealth v. Jones, supra; Commonwealth v. Berrios, supra; Commonwealth v. Hicks, supra. Accord, Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio, supra; People v. Bower*, 24 Cal.3d 638, 597 P.2d 115, 156 Cal.Rptr. 856 (1979); *People v. De Bour, supra; State v. Warner, supra; State v.*

rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra,* 392 U.S. at 21, 88 S.Ct. at 1880.[5] The most severe form of governmental intrusion is the warrantless arrest, which requires that the police officer possess probable cause to believe that a crime has been committed and that the person to be arrested is the culprit.[6]

In *Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978), our Supreme Court recognized the difficulty inherent in distinguishing between innocuous police-citizen contacts and the comparatively more severe detention commonly known as a *Terry* stop.

> The line of demarcation between merely "approaching a person and addressing questions to him" or "legally stopping" him, *Commonwealth v. Berrios,* [437 Pa. 338,] at 340, 263 A.2d [342,] at 343 [(1970)] . . ., and restraining him or making a "forcible stop," *Terry,* supra, 392 U.S. at 32, 88 S.Ct. at 1885 (Harlan, J., concurring) . . ., is not subject to precise definition because of "the myriad daily situations in which policemen and citizens confront each other on the street." *Terry,* supra at 17, 88 S.Ct. at 1875. Each factual situation must be examined to determine if force was used to restrain the citizen in some way. Such force may include "physical force or [a] show of authority." *Terry,* supra at 19, n.16, 88 S.Ct. at 1879, n.16.

474 Pa. at 371, 378 A.2d at 839 (footnote omitted). *See also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion); *United States v. Wylie, supra; United States v. Coates,* 413 F.2d 371 (D.C.Cir. 1969); *State v. Conti,* 573 S.W.2d 95 (Mo.App.1978). After

*Canape,* 46 Or.App. 453, 611 P.2d 1190 (1980); *State v. Kennedy,* 45 Or.App. 911, 609 P.2d 438 (1980).

**5.** *Accord, Commonwealth v. Jones, supra,* 474 Pa. at 369, 378 A.2d at 838; *Commonwealth v. Berrios, supra,* 437 Pa. at 340, 263 A.2d at 343; *Commonwealth v. Hicks, supra.*

**6.** *Commonwealth v. Stokes,* 480 Pa. 38, 389 A.2d 74 (1978); *Commonwealth v. Jackson,* 450 Pa. 113, 299 A.2d 213 (1973); *Commonwealth v. Zimmerman,* 282 Pa.Super. 286, 422 A.2d 1119 (1980).

noting several situations in which a *Terry* stop obviously would occur, the Court in *Jones* addressed the "more difficult situation . . . where no order or physical restraint is involved and the citizen does not attempt to walk away." 474 Pa. at 371, 378 A.2d at 839. The Court fashioned the following flexible standard for determining whether the amount of force employed is sufficient to transform an innocuous contact into a *Terry* stop:

> Thus, to determine when a "stop" has occurred in the more difficult situation all of the circumstances which may in any way evidence a show of authority or exercise of force including such subtle factors as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements must be examined. Once this factual examination has been made, the pivotal inquiry is whether, considering all of the facts and circumstances evidencing an exercise of force, "a reasonable man, innocent of any crime, would have thought [he was being restrained] had he been in the defendant's shoes." *United States v. McKethan,* 247 F.Supp. 324, 328 (D.D.C.1965), aff'd by order No. 20,059 (D.C. Cir. 1966).

*Id.,* 474 Pa. at 371–373, 378 A.2d at 839–40 (footnote omitted). *Accord, United States v. Mendenhall, supra* at 553–57, 100 S.Ct. at 1877–78; *United States v. Wylie, supra* at 68; *United States v. Coates, supra* at 373; *State v. Conti, supra* at 99. In *Jones,* the Court concluded that a "stop" had occurred when uniformed policemen in a marked car approached the defendant on a highway and addressed questions to him. Crucial to the Court's determination was the fact that the police *"escalated the exercise of force* by asking Jones to be seated in the car." *Id.,* 474 Pa. at 374, 378 A.2d at 840 (emphasis added). Thus, the police retrained Jones through a showing of authority. *Compare Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977) (no stop when three policemen in civilian clothes and unmarked car double parked, approached defendant, addressed questions to him, but did not restrict his freedom) *with Commonwealth v.*

*Merbah,* 270 Pa.Super. 184, 411 A.2d 244 (1979) (officer stopped a moving vehicle) *and with Commonwealth v. Stewart,* 257 Pa.Super. 334, 390 A.2d 1264 (1978) (stop occurred when police restrained defendant from walking away).

In concluding that Officer Fruecht had "stopped" appellees, the lower court found that a uniformed police officer in a marked patrol car drove off the road onto a dark, abandoned, private parking lot and parked next to the car in which appellees were sitting. He asked them what they had been doing and requested identification from them. "He escalated the force by directing his flashlight into the car and [Ms. Williams'] purse while all three were producing their identification." Opinion of the Lower Court at 5. Additionally, the lower court noted that the officer testified that had appellees attempted to drive away, he would have pursued them. Thus, the lower court concluded that appellees could reasonably believe that they had been "stopped" and that they were not free to leave until they answered the officer's questions. *Id.*

 We are not free to reverse a suppression court unless its factual findings lack support in the record or its legal conclusions drawn therefrom are in error. *Commonwealth v. Hall, supra,* 475 Pa. at 485–486, 380 A.2d at 1240. Here, there was ample evidence in the record to support virtually all of the lower court's findings of fact.[7] Although the officer's being in uniform is not by itself sufficient to warrant a conclusion that a "stop" occurred, it is a factor to weigh in making such a determination. *Commonwealth v.*

7. Because we believe that there were other sufficient facts to warrant the lower court's conclusion that a forcible stop did occur, we need not consider whether the shining of the flashlight into the car constituted an escalation of force, as the lower court found. We note, however, that the officer testified that he did not lean or reach into the car with his flashlight and that the parking lot was dark. *See Commonwealth v. Clelland,* 227 Pa.Super. 384, 323 A.2d 60 (1974); *State v. Merideth,* 603 S.W.2d 872 (Tex.Crim.App.1980). It is thus as likely that the officer used his flashlight in an effort to assist Ms. Williams to find her identification, or to protect himself should she be searching for a weapon in her purse, as it is that he was using it as an instrumentality of force. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977)

*Jones, supra,* 474 Pa. at 371, 378 A.2d at 839. Moreover, although appellees' car was parked and Officer Fruecht took no overt measures to detain it, we have no doubt that under the facts found by the lower court, appellees could reasonably have concluded that they were not free to go. *See Commonwealth v. Galadyna,* 248 Pa.Super. 226, 231, 375 A.2d 69, 72 (1977) (stop occurred when three policemen parked their car facing defendants' car, approached the passenger side window of defendants' car on foot, and addressed questions to them regarding a stolen radio).[8]

■ Having determined that Officer Fruecht "stopped" appellees, we must now decide whether he possessed "sufficient and articulable facts which, taken together with rational inferences [therefrom], reasonably warrant[ed] that intrusion." *Terry v. Ohio, supra* at 21, 88 S.Ct. at 1880. In *Commonwealth v. Jones,* the Court, holding that the officers lacked adequate justification, stated:

A stop for investigatory purposes in this context is justified only if the "police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot...." *Terry,* supra 392 U.S. at 30, 88 S.Ct. at 1884. [Officer] Hoffman testified his observations aroused his curiosity and suspicion about Jones; but, he also testified Jones was violating no law when observed and the record is devoid of any facts to support a reasonable conclusion that criminal activity may have been afoot. Thus, under the circumstances presented, the seizure lacked justification.

(police officer who lawfully stops a vehicle may order the driver from the vehicle notwithstanding the fact that the officer has no reason to suspect foul play from driver at time of stop); *Terry v. Ohio, supra* (police officer may conduct a limited frisk of a person's outer clothing for weapons). *See also Ulesky v. State,* 379 So.2d 121 (Fla.App. 1979) (search of a woman's purse is within scope of justifiable frisk); *Dawson v. State,* 40 Md.App. 640, 395 A.2d 160 (Ct.Spec.App.1978) (same).

8. *Compare Commonwealth v. Greber,* 478 Pa. 63, 385 A.2d 1313 (1978) (police car parked as to block defendant's car constitutes a stop) (plurality opinion) *with State v. Porter,* 38 Or.App. 169, 589 P.2d 1156 (1979) (police car parked ten feet behind defendant's car, no stop).

474 Pa. at 372–374, 378 A.2d at 840–41. *Accord, Commonwealth v. Greber*, 478 Pa. 63, 67, 385 A.2d 1313, 1316 (1978). *See also Commonwealth v. Berrios, supra; Commonwealth v. Hicks, supra.* Officer Fruecht testified that he was suspicious due to the late hour and recent burglaries. However, he also made two critical admissions on cross-examination: first, that he had no report of any criminal activity in the area that evening; and second, that he had observed no conduct on the part of appellees indicating that criminal activity was afoot. Under these circumstances, the lower court properly concluded that he lacked adequate justification for his "stop" of appellees and the subsequent seizures of the drugs.[9]

Order affirmed.

PRICE, J., dissents.

---

9. The mere fact that these events occurred in what may be characterized as a "high crime area" is not, by itself, a sufficient basis for finding that the stop was justified. *See Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973).