J-S88012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS BEECH, | |
| Appellant | No. 628 EDA 2016 |

Appeal from the Judgment of Sentence of January 22, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000676-2015,
CP-09-CR-0003138-2015 and CP-09-CR-0006115-2014

BEFORE:  OLSON, RANSOM AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 13, 2017**

Appellant, Thomas Beech, appeals from the judgment of sentence entered on January 22, 2016.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> On July 2, 2014, Constance Rondeau [("Rondeau")]. . . arrived home [in Montgomery County] to find a blue Ford Focus parked in her driveway. She waited in her car for her daughter to arrive, as she did not know whose car was in her driveway or if someone was in her home. Thereupon, Rondeau witnessed a "slim natured man with dark hair and his arm wrapped up" exit her home and enter the car and drive off. When Rondeau's daughter arrived, the two of them walked to the back of the house and "saw the disaster." Rondeau noticed that a bench from her deck was moved towards her back window, and that her back window was broken.  Upon entering her house, Rondeau observed "blood all over" the bathroom that was connected to the broken rear window, and "blood all throughout the different portions of the house, even the upstairs."  The DNA

* Retired Senior Judge assigned to the Superior Court

extracted from the blood in Rondeau's house matched Appellant's DNA. Further, the Commonwealth's expert on cellular technology and forensics, using Appellant's cell phone records, offered evidence showing that Appellant's cell phone was "in the vicinity of the victim's residence" surrounding the time of the burglary.

On July 26, 2014, Marybell Melendez [("Melendez")], a resident of [Bucks County] encountered Appellant "trying to get into her back door." While in her home cleaning her bathroom, Melendez heard a knock at her back door, and went and looked out her window and saw Appellant looking around. After losing sight of Appellant and returning to continue to clean her bathroom, Melendez heard scratching, and then stopped what she was doing and approached her back door where she witnessed Appellant trying to break the screen on her back outer door. Melendez then approached Appellant at the back door and engaged in a face to face confrontation with him. When she noticed he was wearing gloves, she indicated that she was going to call the police, at which point Appellant left. . . .

On August 12, 2014, Amanda Paley [("Paley")], a resident of [Bucks County], came home with her 10-month[-]old son, and upon entering her home saw that a window and her bathroom cabinets were left open. She initially thought her husband was responsible for opening them before he left the house. She proceeded to take a shower, and upon finishing, entered her bedroom and noticed that her [closet] door was open, and some of her belongings, including an empty jewelry box, were strewn across the floor. Upon noticing this scene, Paley grabbed her son, exited the house, got in her car, and called 911. Shortly after Paley called 911, a park ranger from the adjacent Bensalem Community Park, Kenneth Buckalew [("Buckalew")], arrived and told Paley he would take a walk around the house to check things out. While walking around the house, Buckalew saw Appellant climb out of Paley's window holding a bag. After Buckalew arrived and proceeded to walk around the house, Paley witnessed Appellant come around the side of her house, carrying "the type of bag they normally give a patient in the hospital." Paley got out of her car and started yelling at Appellant, at which point he started running towards the nearby park. Moments later, Paley observed Appellant "pull out of the driveway of the park in a car," which was a blue Ford Focus. Prior to Buckalew being aware of the incident at Paley's residence, he took a

photograph of a blue Ford Focus parked in the Bensalem Community Park parking lot because he found it suspicious, and at trial Paley identified the car in the photograph as the car in which she saw Appellant drive away. Paley also subsequently identified Appellant's vehicle that was impounded by police as the vehicle in which Appellant fled. Once again, the Commonwealth's expert on cellular technology and forensics, based on Appellant's cell phone records, proffered evidence indicating that Appellant's cell phone was used in close proximity to [Paley's] residence . . . during the time surrounding the burglary of said residence.

Trial Court Opinion, 5/20/16, at 4-6 (honorifics, headings, internal alterations, ellipses, footnote and internal citations omitted).

On August 28, 2014, Officer Steven Bailey stopped Appellant as he drove behind a Target store in an area that was posted no trespassing. After a brief investigation, Officer Bailey arrested Appellant for the burglary of Paley's residence. Subsequently, Melendez, Paley, and Buckalew identified Appellant via photo arrays. Appellant was not provided counsel during these photo arrays.

The procedural history of this case is as follows. The Commonwealth charged Appellant, via three separate criminal informations, with two counts of burglary,[1] two counts of trespass,[2] attempted burglary,[3] attempted trespass,[4] criminal mischief,[5] theft by unlawful taking,[6] attempted theft by

---

[1] 18 Pa.C.S.A. § 3502(a)(1).

[2] 18 Pa.C.S.A. § 3503(a)(1)(ii).

[3] 18 Pa.C.S.A. §§ 901, 3502.

[4] 18 Pa.C.S.A. §§ 901, 3503.

unlawful taking,[7] receiving stolen property,[8] and attempted receiving stolen property.[9]

On March 30, 2015, Appellant filed a suppression motion. On July 22, 2015, the Commonwealth filed a motion to consolidate the three criminal informations for a single trial. Prior to trial, the trial court conducted a combined pre-trial motions hearing. During the hearing, the trial court granted the Commonwealth's consolidation motion and granted in part and denied in part Appellant's suppression motion.

On October 9, 2015, Appellant was convicted of all 11 charges. On January 22, 2016, the trial court sentenced him to an aggregate term of 8 to 20 years' imprisonment. This timely appeal followed.[10]

Appellant presents two issues for our review:

1. Did the trial court err in consolidating for trial two burglaries and one attempted burglary where the incidents were

---

[5] 18 Pa.C.S.A. § 3304(a)(5).

[6] 18 Pa.C.S.A. § 3921(a).

[7] 18 Pa.C.S.A. §§ 901, 3921.

[8] 18 Pa.C.S.A. § 3925(a).

[9] 18 Pa.C.S.A. §§ 901, 3925.

[10] On February 24, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On April 13, 2016, Appellant filed his concise statement. On May 20, 2016, the trial court issued its Rule 1925(a) opinion. Both issues raised on appeal were included in Appellant's concise statement.

factually distinct, occurred in different jurisdictions[,] and occurred over a six-week period?

2. Did the trial court err in failing to grant Appellant's motion to suppress evidence obtained following: (1) a stop of Appellant's car that was not supported by reasonable suspicion; (2) an arrest of Appellant that was not supported by probable cause; and (3) the denial of counsel to Appellant at a post-arrest photo display?

Appellant's Brief at 5 (complete capitalization omitted).

In his first issue, Appellant argues that the trial court erred by consolidating the three criminal informations for trial.[11]  "[T]he decision of whether to join or sever offenses for trial is within the discretion of the trial court, and such decision will not be reversed on appeal absent a manifest abuse of that discretion or a showing of prejudice and clear injustice to the defendant." ***Commonwealth v. Stiles***, 143 A.3d 968, 975 (Pa. Super. 2016) (citation omitted).

Joinder of criminal informations for trial is governed by Pennsylvania Rule of Criminal Procedure 582, which provides, in relevant part:

Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

---

[11] The Commonwealth contends that this issue is waived; however, our review of the certified record indicates that Appellant properly preserved this issue.

Pa.R.Crim.P. 582(A)(1). In this case, it is undisputed that the crimes were not based upon the same act or transaction. Thus, the three criminal informations could only be joined for trial if the requirements of Rule 582(A)(1)(a) were satisfied.

We agree with the trial court that the evidence of the other offenses would have been admissible in separate trials under Pennsylvania Rule of Evidence 404(b), which provides that prior bad acts evidence, while not admissible to show mere propensity, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.Evid. 404(b)(2). Although not included within the enumerated list of permissible uses in Rule 404(b)(2), prior bad acts evidence may be admitted to assist in "proving the existence of a common scheme[.]" *Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014).

In this case, the trial court explained that Appellant's common scheme included burglarizing homes in suburban Philadelphia, during the middle of the day, and entering (or attempting to enter) at or near the rear of the residences. *See* Trial Court Opinion, 5/20/16, at 11, *quoting* N.T., 10/5/15, at 21. We agree that the evidence cited by the trial court proved the existence of a common scheme.

We find instructive this Court's decisions in **Commonwealth v. Armstrong**, 74 A.3d 228 (Pa. Super. 2013), *aff'd*, 107 A.3d 735 (Pa. 2014) and **Commonwealth v. Janda**, 14 A.3d 147 (Pa. Super. 2011). In **Armstrong**, the defendant attempted to burglarize two residences two months apart. The two attempted burglaries were charged in separate criminal informations and the trial court granted the Commonwealth's motion to consolidate the criminal informations for trial. On appeal, this Court affirmed, explaining that "the attempted burglaries . . . took place in close temporal and geographic proximity, [were] committed against women who were alone in their homes late at night, by attempting to pry open a window using a crowbar or metal tool." **Armstrong**, 74 A.3d at 234. Thus, this Court concluded that the attempted burglaries would be admissible in the other trials under Rule 404(b) because they demonstrated a common scheme. **See id.**

In **Janda**, the defendant was charged with nine burglaries via two separate criminal informations. The trial court granted the Commonwealth's motion to join the two criminal informations for trial. On appeal, this Court found that evidence of the burglaries would have been admissible at separate trials under Rule 404(b) in order to prove a common scheme. **See Janda**, 14 A.3d at 156. This Court reasoned that the "thefts took place over a span of several months. . . . Furthermore, the burglarized homes were located within approximately a five mile to six mile radius of one another.

Each of the residences was situated such that it was largely obscured from view from the vantage point of the road." *Id.* (internal citation omitted).

In the case *sub judice*, the similarities of the offenses were akin to the similarities in **Armstrong** and **Janda**. The timeframe for the two burglaries and one attempted burglary in this case was shorter than the timeframe for the burglaries in **Armstrong** and **Janda**. Moreover, although they occurred in separate jurisdictions, the three residences were all in close geographic proximity. All of the burglaries were committed while women were present, in the daytime, and entry was made at or near the rear of the residence. Thus, we conclude that the trial court did not abuse its discretion in finding that the first prong of Rule 404(b)(2) was satisfied.

As to the second prong of Rule 404(b)(2), we conclude that the trial court did not abuse its discretion in finding that the probative value of the other crimes would outweigh any potential for unfair prejudice. Appellant argues that prejudice would have occurred in the two cases where no DNA was found at the crime scene. According to Appellant, the DNA evidence at one scene bolstered the credibility of the eyewitnesses who testified that he committed the other burglary and attempted burglary. Appellant ignores, however, that an expert would have testified in the Paley burglary trial that Appellant's cellular telephone records placed him at or near the crime scene at the time of the burglary. Moreover, the eyewitness identifications in this case were not equivocal. Instead, they were made without hesitation. We

ascertain a high probative value and very little risk of unfair prejudice if the other burglaries were admitted. Thus, the second prong of Rule 404(b)(2) was satisfied. As such, the burglaries and attempted burglary would have been admissible at separate trials.

The second prong of Rule 582(A)(1)(a) was also satisfied. The jury could easily separate the burglaries and attempted burglary. Each burglary and attempted burglary occurred on a different day, at a different residence, and involved different victims and witnesses. There was no danger that the jury would be confused by the joinder of the offenses into a single trial. Thus, we conclude that the trial court did not abuse its discretion in consolidating the three criminal informations for trial.

In his second issue, Appellant argues that the trial court erred in denying his suppression motion. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Evans***, 2016 WL 7369120, *3 (Pa. Super. Dec. 20, 2016) (citation omitted). "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Simonson***, 148 A.3d 792, 796 (Pa. Super. 2016) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the

[trial] court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "Because the Commonwealth prevailed before the [trial] court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Valdivia***, 145 A.3d 1156, 1159 (Pa. Super. 2016) (citation omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." ***Commonwealth v. Palmer***, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted).

Appellant presents three discrete suppression challenges. In his first suppression challenge, Appellant argues that Officer Bailey lacked reasonable suspicion to stop him. In his second suppression challenge, Appellant argues that Officer Bailey lacked probable cause to arrest him. In his final suppression challenge, Appellant argues that the trial court should have suppressed Melendez's, Paley's, and Buckalew's identifications of him as the perpetrator of the offenses.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures[.]" ***Commonwealth v. Korn***, 139 A.3d 249, 258 (Pa. Super. 2016), *appeal denied*, 2016 WL 6107660 (Pa. Oct. 18, 2016) (citation omitted). "To safeguard these rights, courts require police to

articulate the basis for their interaction with citizens in three increasingly intrusive situations." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration, quotation marks, and citation omitted).

This Court has described the three types of police/citizen interactions, and the necessary justification for each, as follows:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Stilo*, 138 A.3d 33, 36 (Pa. Super. 2016) (citation omitted).

It is undisputed that Officer Bailey needed reasonable suspicion to stop Appellant. *See Commonwealth v. Salter*, 121 A.3d 987, 992 (Pa. Super. 2015) (citation omitted) (reasonable suspicion necessary to investigate possible criminal activity). As this Court has explained:

> To establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time the officer conducted the stop must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts

- 11 -

available to the officer at the moment of the stop warrant a person of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Postie*, 110 A.3d 1034, 1039–1040 (Pa. Super. 2015) (internal alterations and citation omitted).

In this case, Officer Bailey witnessed Appellant drive into an area marked "no trespassing" behind a closed Target store. N.T., 10/5/15, at 119. This gave Officer Bailey reasonable suspicion to stop Appellant in order to investigate whether he was casing the store,[12] *i.e.*, determining whether he could successfully burglarize the store, or committing a defiant trespass.[13] *See id.* at 122. Accordingly, Officer Bailey's stop of Appellant was supported by reasonable suspicion.[14]

Next, Appellant argues that Officer Bailey lacked probable cause to arrest him after the traffic stop. "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to

---

[12] Appellant's citation to *Commonwealth v. Williams*, 429 A.2d 698 (Pa. Super. 1981) is unpersuasive. In that case, the defendants were in an "abandoned, private parking lot of a swimming pool which was being salvaged." *Id.* at 699. In this case, Appellant was in the parking lot of a closed store.

[13] *See* 18 Pa.C.S.A. § 3503(b)(1)(ii) ("A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . posting in a manner prescribed by law or reasonably likely to come to the attention of intruders[.]").

[14] Moreover, for essentially the same reasons that we conclude *infra* that Officer Bailey had probable cause to arrest Appellant, we also conclude that Officer Bailey had reasonable suspicion to stop Appellant to investigate his involvement in the burglary of Paley's residence.

warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Hernandez***, 935 A.2d 1275, 1284 (Pa. 2007) (citation omitted). "In determining whether probable cause exists, we [look at the] totality of the circumstances." ***Commonwealth v. Fleet***, 114 A.3d 840, 854 (Pa. Super. 2015) (citation omitted).

At the time Officer Bailey arrested Appellant, he knew the following information: (1) Appellant previously was convicted of burglary, N.T., 10/5/15, at 128; (2) Appellant matched the general description of the individual who burglarized Paley's residence, ***id.*** at 123;[15] (3) Appellant was driving a vehicle which matched the color, make, and model of the vehicle driven by the individual who burglarized Paley's residence, ***id.*** at 109; (4) Appellant's vehicle had a blue emblem on the right side of the trunk which matched the photograph of the suspect's vehicle taken by Buckalew, ***id.*** at 105; (5) Appellant's license plate holder was made of chain link which matched the photograph of the suspect's vehicle taken by Buckalew, ***id.***; and (6) Appellant was one and one-half miles from Paley's residence. ***Id.*** at 114. As Appellant notes, however, other circumstances indicated that Appellant was not the individual who burglarized Paley's residence. For example, he had short hair at the time of his arrest while the individual who

---

[15] Appellant argues that the trial court found this testimony not credible. ***See*** Appellant's Brief at 21. His citation, however, is to the assistant district attorney's argument on the suppression motion.

burglarized Paley's residence had long hair. Furthermore, his license plate number did not match the license plate number in the photograph.

We agree with the trial court that the totality of the circumstances established probable cause that Appellant was the suspect who burglarized Paley's residence. Although Appellant's hair was short at the time of the arrest, it only takes minutes for an individual to cut his hair in order to change his appearance. As to the license plate number, Officer Bailey knew that the license plate number from the photograph was recovered using photo enhancement techniques and, therefore, an error was possible. N.T., 10/5/15, at 129. Detective Michael Moretti, the individual investigating the burglary of Paley's residence, and Officer Bailey agreed that Appellant's vehicle was probably the vehicle photographed by Buckalew. *Id.* at 128. Thus, there were six circumstances that weighed heavily in favor of Officer Bailey believing that Appellant burglarized Paley's residence while the circumstances that weighed against that inference were not weighty. As such, we conclude that the trial court properly found that Appellant's arrest was supported by probable cause.

Finally, Appellant argues that the trial court should have suppressed Melendez's, Paley's, and Buckalew's in-court and out-of-court identifications of him as the perpetrator of the offenses. "In Pennsylvania, a defendant has a constitutional right to have counsel present during identification procedures." *Commonwealth v. Kearney*, 92 A.3d 51, 67 (Pa. Super.

2014), *appeal denied*, 101 A.3d 102 (Pa. 2014) (citation omitted). A defendant, however, does not have a constitutional right to have counsel present during identification procedures if he is in custody for an offense different from that for which the photo array is compiled. ***Commonwealth v. Harrell***, 65 A.3d 420, 438 (Pa. Super. 2013), *appeal denied*, 101 A.3d 785 (Pa. 2014) (citation omitted); ***see Commonwealth v. Zabala***, 456 A.2d 622, 629 (Pa. Super. 1983).

In this case, Appellant was in custody for burglarizing Paley's residence at the time the photo array was compiled for the attempted burglary of Melendez's residence. Thus, Appellant did not have the constitutional right to have counsel present at the photo array shown to Melendez.

As to the photo array identifications by Paley and Buckalew, the trial court granted in part and denied in part Appellant's suppression motion. Specifically, the trial court suppressed Paley's and Buckalew's out-of-court identifications at the photo arrays because Appellant was denied counsel at those photo arrays. The trial court, however, permitted Paley and Buckalew to identify Appellant in court. After careful consideration, we conclude that the trial court did not abuse its discretion in permitting Paley and Buckalew to identify Appellant in court.

As this Court has explained:

When an out-of-court identification is alleged to be tainted, an in-court identification may still stand if, considering the totality of the circumstances, the identification had an origin sufficiently distinguishable to be purged of the primary taint. The factors a

- 15 -

court should consider in determining whether there was an independent basis for the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness['] degree of attention; (3) the accuracy of the witness['] prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation.

*Commonwealth v. Kendricks*, 30 A.3d 499, 506 (Pa. Super. 2011), *appeal denied*, 46 A.3d 716 (Pa. 2012) (internal quotation marks and citation omitted); *see Commonwealth v. Carver*, 436 A.2d 1209, 1211-1212 (Pa. Super. 1981)

As to the first factor, both Paley and Buckalew viewed Appellant for a relatively significant period of time, *i.e.*, more than one minute.[16] *See* N.T., 10/6/15, at 28, 65.[17] Moreover, both Paley and Buckalew were relatively close to Appellant when they viewed him during daylight without any obstructions in their lines of sight. *See id.* at 30, 59. As to the second factor, both Paley and Buckalew knew that they were witnessing a crime when they viewed Appellant. Thus, their degrees of attention were at their peak. *See id.* at 26; *see also id.* at 57. As to the fourth factor, Paley and Buckalew expressed a high degree of certainty that Appellant was the same person they saw fleeing Paley's residence. *See id.* at 33, 66. Thus, the

---

[16] Appellant argues that it was only a few seconds; however, the trial court found Paley's and Buckalew's testimony that it was at least one minute credible. *See* Trial Court Opinion, 5/20/16, at 20.

[17] There are two volumes of testimony dated October 6, 2015. Our citation is to the volume in which pre-trial matters were litigated.

first, second, and fourth factors all weighed heavily in favor of finding that Paley's and Buckalew's in-court identifications were not tainted by their identifications at the photo arrays.

As to the fifth factor, there was an approximate 14-month gap between the burglary of Paley's residence and when Paley and Buckalew identified Appellant in court. While this is not a short amount of time, it is also not a long period of time. Thus, we conclude that the fifth factor was neutral.

As to the third factor, both Paley and Buckalew's physical descriptions of Appellant after the burglary were generally accurate. Their descriptions, however, also contained some inaccuracies. For example, Buckalew originally told police that the burglar was 6'3" tall and Appellant is significantly shorter than that height.

When weighing all of these factors, the trial court determined that Paley's and Buckalew's in-court identifications were not tainted by their photo array identifications. We ascertain no abuse of discretion in this determination. The minor inconsistencies in conveying descriptions of Appellant were outweighed by the certainty of their in-court identifications made after viewing Appellant for a significant period of time, during daylight hours, and at the scene of a crime. Accordingly, we conclude that the trial court properly granted in part and denied in part Appellant's motion to suppress as it related to the uncounseled photo arrays.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017